ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Logistics and Rental Car SARL | ) ASBCA No. 63485 |
| | ) |
| Under Contract No. FA5422-14-P-3073 *et al.* | ) |

APPEARANCES FOR THE APPELLANT: Amir Moussa, Esq.
  Ahmed Abdourahman Cheik, Esq.
   Republic of Djibouti, Africa

APPEARANCES FOR THE GOVERNMENT: Caryl A. Potter, III, Esq.
  Air Force Deputy Chief Trial Attorney
  Aaron J. Weaver, Esq.
   Trial Attorney


OPINION BY ADMINISTRATIVE JUDGE ARNETT
ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT


This appeal arises from a September 16, 2022 claim submitted by Logistics and Rental Car SARL (appellant) seeking compensation for damage to numerous vehicles that it leased to the Air Force (Air Force or the government) under multiple contracts. The Air Force has moved for summary judgment asserting that no genuine issues of material fact remain for hearing arising from appellant's claim. In support of its motion, the Air Force makes three arguments: 1) appellant's claim consisting of Subclaims A through G is barred by the six-year statute of limitations; 2) Subclaims E, F, and G are barred because they were the subject of a release of claims; and 3) Subclaims A, B, and D are barred because they were addressed in a previous contracting officer's final decision and not timely appealed.

Because they were addressed in a prior contracting officer's decision and not timely appealed, we lack jurisdiction over Subclaims A, B, C, and D. Because they were the subject of a bilateral modification and release, we deny Subclaims E, F, and G. For these reasons as further explained herein, the government's motion is granted.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

*The Contracts:*

1. In 2014-2016, the Air Force executed several contracts with appellant to lease vehicles in support of operations at Camp Lemonnier and Chabelley Airfield in

Djibouti, Africa (R4, tabs 2, 5, 6, 9-11). The contracts at issue include Contract Nos. FA5422-14-P-3009, FA5422-14-P-3073, FA5422-15-P-3021, and Call Order Nos. 10, 16, and 21 issued under Blanket Purchase Agreement (BPA) No. FA5422-15-A-3004.

2. On March 27, 2014, the Air Force awarded Contract No. FA5422-14-P-3009 to appellant (R4, tab 2 at 1). It was a firm fixed-price contract for a twelve-month lease of three vehicles specified by the Performance Work Statement (PWS) (*id.* at 2).

3. On September 25, 2014, the Air Force awarded Contract No. FA5422-14-P-3073 to appellant (R4, tab 5 at 1). It was a firm fixed-price contract for a one-month lease of seven specified vehicles consistent with the PWS (*id.* at 2).

4. On December 23, 2014, the Air Force awarded Contract No. FA5422-15-P-3021 to appellant (R4, tab 6 at 1). It was a firm fixed-price contract for a 40-day lease of seven specified vehicles consistent with the PWS (*id.* at 2).

5. On October 1, 2015, the Air Force awarded Call Order No. 10 under BPA FA5422-15-A-3004 (hereinafter "the BPA") to appellant (R4, tab 9 at 1). It was a firm fixed-price contract for a three-month lease of twelve vehicles specified by the PWS (*id.* at 2).

6. On April 1, 2016, the Air Force awarded Call Order No. 16 under the BPA to appellant (R4, tab 10 at 1). It was a contract for a three-month lease of eight specified vehicles consistent with the PWS (*id.* at 3-4).

7. On July 1, 2016, the Air Force awarded Call Order No. 21 under the BPA to appellant (R4, tab 11 at 1). It was a contract for a three-month lease of four specified vehicles in accordance with the PWS (*id.* at 3).

*Appellant's First Claim:*

8. On June 30, 2020, appellant submitted a claim seeking $274,464.77 for vehicle damage and repairs arising under several call orders issued against the BPA (R4, tab 25).

9. On October 14, 2020, the contracting officer issued a final decision finding merit associated with appellant's June 30, 2020 claim (R4, tab 25 at 1-2).

10. On December 11, 2020, the parties executed Modification No. P00006 on BPA Call Order 0029 in the amount of $293,019.63 which included "[p]ayment of certified claim for vehicle damages and accident repairs in the amount of $274,464.77" for the June 30, 2020 claim plus $18,554.86 for other unpaid services (R4, tab 43g

at 1-2).  Issued under the Disputes Clause, the modification was signed by both parties and stated,

> This is the FINAL PAYMENT on this Blanket Purchase Agreement (BPA).  As a result, ALL calls will be closed allowing for successful closeout of the entire BPA.  EL Company, Logistics & Rental Car, S.A.R.L. releases and discharges the Government, its officers, agents and employees, of and from all liabilities, obligations and claims whatsoever in law and equity arising out of or by virtue of this contract.

(*Id.* at 1)

11.  On December 12, 2020, appellant signed a "Release of Claims" for the BPA which stated, in consideration of the sum of $293,019.63, appellant "does release and discharge the Government . . . from all liabilities, obligations and claims whatsoever in law and equity arising out of or by virtue of said contract" except any claims specified (R4, tab 47 at 1).  Appellant did not list any claims to be excluded from the Release (*id.*).

12. On February 16, 2021, appellant received an electronic payment of $293,019.63 for Call Order 0029 on the BPA (R4, tab 43h at 1).  On February 17, 2021, appellant confirmed receipt of the payment (R4, tab 48 at 1).

13.  We find that appellant released its right to further compensation under the BPA through its execution of Modification No. P00006, the release of claims, and acceptance of final payment on the BPA.

*Appellant's Second Claim:*

14.  On October 29, 2021, appellant submitted a claim (the "Second Claim") for $136,757.76 for damage to vehicles leased under three contracts:  Nos. FA5422-14-P-3009, FA5422-14-P-3073, and FA5422-15-P-3021 (R4, tab 27).  The Second Claim sought payment for four invoices[1] (*id.*).

> A. Contract No. FA5422-14-P-3009, Invoice 00132540A-14, requested $75,776.21 (*id.* at 6-7).  Dated October 2, 2014, this invoice was for

---

[1] The Second Claim does not label the invoices A-D.  We have added labels to identify each subclaim of the Second Claim and listed them in the same sequence as they later appear in the Third Claim.

"Cost Repair Rollover Vehicle" for two vehicles with Vehicle Plate Nos. 405D40 and 901D41 (*id.*).

B. Contract No. FA5422-14-P-3073, Invoice 6232A-15, requested $21,300.45 for Vehicle Plate No. 45D59 (*id.* at 8-9). Dated October 16, 2014, this invoice listed "Vehicle Wrecked" as the description (*id.*).

C. Contract No. FA5422-14-P-3009, Invoice 120002A-15, requested $27,440.00 for Vehicle Plate No. 341D43 (*id.* at 2-3). Dated September 1, 2015, the invoice was for "Cost Repair Vehicle Rollover-Reform" (*id.*).

D. Contract No. FA5422-15-P-3021, Invoice 002400A-15, requested $12,241.10 for Vehicle Plate No. 488D60 (*id.* at 4-5). Dated January 20, 2015, this invoice was for repair of "BACK WINDOW, Front Window & Damage" (*id.*).

15. On November 22, 2021, the contracting officer issued a final decision denying appellant's Second Claim and stated the basis for denial (R4, tab 32 at 1-2). The decision stated that it was final and set forth appellant's right to appeal under the Contract Disputes Act (CDA) within 90 days from receipt (*id.* at 1-2).

16. Appellant received the decision denying the Second Claim on November 22, 2021 (R4, tab 31 at 1). On November 22, 2021 and November 26, 2021, appellant posed questions to which the contracting officer responded that the claim had been denied and re-sent the final decision (R4, tabs 33-34).

17. There has been no assertion and we find no evidence that appellant appealed the November 22, 2021 contracting officer's final decision within the 90-day window required by the CDA.

*Appellant's Third Claim:*

18. On September 16, 2022, appellant submitted a claim (the "Third Claim") for $550,350.67 for damages to leased vehicles (R4, tab 13b). It sought payment for seven invoices labelled A through G (hereinafter "Subclaims A-G").

A. Contract No. FA5422-14-P-3009, Invoice 00132540A-14, requested $75,776.21 (*id.* at 1, 3). Dated October 2, 2014, this invoice was for "Cost Repair Rollover Vehicle" for vehicles with Plate Nos. 405D40 and 901D41 (app. supp. R4, tab 24e).

4

B. Contract No. FA5422-14-P-3073, Invoice 6232A-15, requested $21,300.45 for Vehicle Plate No. 45D59 (R4, tab 13b at 1, 3; app. supp. R4, tab 24h). Dated October 16, 2014, this invoice listed "Vehicle Wrecked" as the description (app. supp. R4, tab 24h).

C. Contract No. FA5422-14-P-3009, Invoice 120002A-15, requested $27,440.00 for Vehicle Plate No. 341D43. Dated September 1, 2015, the invoice was for "Cost Repair Vehicle Rollover-Reform". (R4, tab 13b at 2-3; app. supp. R4, tab 24f)

D. Contract No. FA5422-15-P-3021, Invoice 002400A-15, requested $12,241.10. Dated January 20, 2015, this invoice was for repair of Vehicle Plate No. 488D60. (R4, tab 13b at 2-3; app. supp. R4, tab 24g)

E. BPA FA5422-15-A-3004-0010, Invoice 0060A-15, requested $97,500.00 (R4, tab 13b at 2-3). This invoice sought payment for repair of three wrecked vehicles (app. supp. R4, tab 24j).

F. BPA FA5422-15-A-3004-0016, Invoice 00215A-16, requested $161,128.30 (R4, tab 13b at 2-3). This invoice was for costs associated with four wrecked vehicles (app. supp. R4, tab 24k).

G. BPA FA5422-15-A-3004-0021, Invoice 0010A-16, requested $154,964.61 (R4, tab 13b at 2-3). This invoice sought payment for repair of three rollover vehicles (app. supp. R4, tab 24i).

19. We find that Subclaims A, B, C, and D of appellant's Third Claim are duplicative with the four items presented in appellant's Second Claim. Thus, we find that Subclaims A, B, C, and D of the Third Claim were denied with appellant's Second Claim in the final decision issued on November 22, 2021, and not timely appealed to the Board.

20. Further, we find that Subclaims E, F, and G arise from the BPA (No. FA5422-15-A-3004) which was the subject of bilateral Modification No. P00006, the release of claims, and final payment to appellant in the amount of $293,019.63. We have found that appellant released its right to further compensation under this BPA (SOF ¶ 13).

21. On November 17, 2022, the contracting officer issued a final decision denying appellant's Third Claim (R4, tab 13a).

5

*Appellant's Appeal:*

22. On December 16, 2022, appellant appealed the contracting officer's November 17, 2022 decision denying the Third Claim. The Board docketed the appeal as ASBCA No. 63485.

23. Appellant's Complaint seeks a total of $815,455.87 which includes the amount sought in the Third Claim of $550,350.67 plus interest over five years in the amount of $165,105.20 plus "damages of interest" in the amount of $100,000.

DECISION

I. *The Parties' Contentions*

The Air Force asserts that no genuine issues of material fact remain in dispute as to the seven subclaims set forth in appellant's Third Claim which is the basis of this appeal. First, the Air Force argues that 14 of the 15 vehicles in Subclaims A through G are barred by the six-year statute of limitations under the CDA (gov't mot. at 14-16). Next, the Air Force contends that Subclaims E, F, and G are barred because they were the subject of bilateral Modification No. P00006 and a release of claims (*id.* at 16-18). Finally, the Air Force asserts that Subclaims A, B, and D[2] are barred because they were addressed in a prior contracting officer's final decision and not timely appealed (*id.* at 18-20).

Appellant requests that the Board deny the government's motion for summary judgment (app. resp. at 1, 15). Appellant does not address the statute of limitations issue and characterizes both Modification No. P00006 and the release of claims as "deception[s]" (*id.* at 4-6). However, appellant acknowledges receipt of $293,019.63 associated with Modification No. P000006 (*id.* at 5). Appellant also admits receipt of the contracting officer's final decision on the Second Claim and that it "has not taken a (sic) appeals" from the denial of that claim (*id.* at 6-7). Finally, Appellant contends that it has not received payment for the items identified in its Third Claim (*id.* at 8-14).

II. *Standard of Review*

Summary judgment should be granted if it has been shown that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All significant doubt over

---

[2] Through an apparent oversight, the government omitted Subclaim C from its argument. However, a comparison of the Second Claim to the Third Claim reveals that Subclaims A, B, C, and D are included in both (R4, tabs 27, 13b).

6

factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987); *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Our job is to "ascertain whether material facts are disputed and whether there exists any genuine issue for trial." *Holmes & Narver Constructors, Inc.*, ASBCA Nos. 52429, 52551, 02-1 BCA ¶ 31,849 at 157,393 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). To avoid summary judgment, the nonmoving party must do more than make mere allegations; it must assert facts sufficient to show a dispute of material fact. *Mingus Constructors*, 812 F.2d at 1390-91.

Because the government's motion raises a jurisdictional challenge to several subclaims in this appeal, we must address the issue of jurisdiction first.

III. *The Board Lacks Jurisdiction Over Subclaims A, B, C, and D.*

We do not possess jurisdiction over Subclaims A, B, C, or D. The Board's jurisdiction is governed by the CDA which requires that each claim by a contractor be submitted to the contracting officer for a final decision. 41 U.S.C. § 7103(a)(1). A contractor may appeal a contracting officer's final decision to an agency board if the appeal is initiated within 90 days of receipt of the decision. 41 U.S.C. § 7104(a). The 90-day window is set forth by statute and cannot be waived or extended. *Cosmic Constr. Co. v. United States*, 697 F.2d 1389, 1390-91 (Fed. Cir. 1982). Once a contracting officer's final decision is issued, that decision "is final and conclusive and is not subject to review by any forum, tribunal, or Federal Government agency, unless an appeal or action is timely commenced." 41 U.S.C. § 7103(g). Therefore, the Board lacks jurisdiction over any appeal that is untimely filed after the 90-day period. *Id.*

Here, Subclaims A, B, C, and D of appellant's Third Claim were first asserted in appellant's Second Claim and denied by the contracting officer on November 22, 2021 (SOF ¶¶ 14, 15, 19). It is undisputed that, on November 22, 2021, appellant received the contracting officer's final decision denying the Second Claim (SOF ¶ 16). The 90-day window for appellant to file a timely appeal of that decision to an agency board elapsed on or about February 20, 2022 (SOF ¶ 17). Appellant does not allege[3] nor have we found any evidence that appellant filed a timely appeal of the decision denying its Second Claim (app. resp. at 8; SOF ¶ 17).

Since it is undisputed that appellant did not appeal the denial of its Second Claim, we conclude that the contracting officer's November 22, 2021 decision

---

[3] In para. 29 of the Statement of Undisputed Material Facts included in its motion, the government asserts that appellant did not appeal the contracting officer's decision denying the Second Claim (gov't mot. at 7). Appellant does not expressly dispute the proposed fact (app. resp. at 8).

became, as a matter of law, final and conclusive, and not subject to review by this Board. We have found that the issues asserted in appellant's Second Claim are duplicative with and were resubmitted as Subclaims A, B, C, and D in appellant's Third Claim (SOF ¶ 19). Appellant may not revive the substance of the Second Claim by resubmitting it as Subclaims A, B, C, and D of the Third Claim. *See HGI Skydyne*, ASBCA Nos. 56108, 56664, 09-2 BCA ¶ 34,303 at 169,451; *Santa Fe Eng'rs, Inc.*, ASBCA No. 26883, 82-2 BCA ¶ 16,030 at 79,439 (having failed to appeal timely a contracting officer's final decision on one issue, the contractor could not renew the claim later by merging it into other claims which are the subject of another final decision). Thus, we conclude that appellant's appeal of Subclaims A, B, C, and D is untimely, and the Board lacks jurisdiction over Subclaims A, B, C, and D.

IV. *Appellant Released Subclaims E, F, and G*.

It is undisputed that appellant signed Modification No. P00006 and a release of claims on the BPA which expressly provided for final payment and closeout of the BPA (SOF ¶¶ 10-11). It is also undisputed that appellant received payment in the amount of $293,019.63 as final payment on the BPA (SOF ¶ 12). We have found that appellant released its right to further compensation under the BPA (SOF ¶ 13).

"A release is a contract whereby a party abandons a claim or relinquishes a right that could be asserted against another." *Colorado River Materials, Inc. d/b/a NAC Constr.*, ASBCA No. 57751, 13-1 BCA ¶ 35,233 at 172,991. It is interpreted in the same manner as any other contract term or provision. *See JAAAT Tech. Servs.*, ASBCA No. 61792 *et al.*, 21-1 BCA ¶ 37,878 at 183,970 (citing *Metric Constr., Inc. v. United States*, 314 F.3d 578, 579 (Fed. Cir. 2002)). When a release is clear, unequivocal, and unconditional, the release "must be given its plain meaning and effect." *New Iraq Ahd Co.*, ASBCA No. 59304, 15-1 BCA ¶ 35,849 at 175,292. Such a release "bars any and all claims for additional compensation based upon events occurring prior to the execution of the release." *Id.* Generally, a release is binding on both parties if it is complete on its face and reflects the contractor's unqualified acceptance and agreement with its terms. *JAAAT Tech. Servs.*, 21-1 BCA ¶ 37,878 at 183,970; *Inland Empire Builders, Inc. v. United States*, 424 F.2d 1370, 1376 (Ct. Cl. 1970).

Here, the release language in Modification No. P000006 demonstrated the parties' mutual intent to "closeout" the BPA and expressly stated that appellant "releases and discharges the Government . . . from all liabilities, obligations and claims whatsoever in law and equity arising out of or by virtue of this contract" (SOF ¶ 10). Contemporaneously, appellant executed a "Release of Claims" which was appellant's opportunity to identify any claims excluded from the release. However, appellant accepted consideration in the amount of $293,019.63 in exchange for a full release of claims and identified no claims to be excluded from the release. (SOF ¶ 11)

8

We find the release to be clear, unequivocal, and unconditional. Such a release bars any and all claims for additional compensation arising from the BPA. This appeal includes Subclaims E, F, and G which arise from the BPA. Since appellant did not exclude these claims from the Release of Claims, we conclude that appellant released Subclaims E, F, and G when it executed Modification No. P000006 and the Release of Claims in December 2020. The government is entitled to summary judgment as a matter of law.[4]

CONCLUSION

The Board dismisses Subclaims A, B, C, and D for lack of jurisdiction. As to Subclaims E, F, and G, we grant summary judgment in favor of the government. All relief sought by appellant under its appeal is denied.

Dated: June 24, 2024

LAURA J. ARNETT
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[4] Having dismissed Subclaims A-D and rendered judgment in favor of the government as to Subclaims E-G, we find it unnecessary to address the statute of limitations issue.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63485, Appeal of Logistics and Rental Car SARL, rendered in conformance with the Board's Charter.

Dated:  June 24, 2024

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals